**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

OSCAR URIBE,

     Petitioner

v.

ISIDRO BACA, et al.,

     Respondents.

Case No.: 3:15-cv-00309-RCJ-WGC

**Order**

## I.    INTRODUCTION

This case is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Oscar Uribe, a Nevada prisoner. This case is before the Court for adjudication of the merits of Uribe's remaining claims. The Court will deny Uribe's habeas petition, will deny him a certificate of appealability, and will direct the Clerk of the Court to enter judgment accordingly.

## II.    BACKGROUND

On October 22, 2010, Uribe pleaded guilty to second-degree murder with the use of a firearm. ECF No. 14-27. Uribe was sentenced to 10 to 25 years for the second-degree murder conviction with a consecutive term of 60 to 150 months for the deadly weapon enhancement. ECF No. 14-37. The Nevada Supreme Court affirmed the conviction. ECF No. 15-9.

Uribe filed a *pro se* state habeas petition and a counseled, supplemental petition on November 21, 2011, and August 13, 2012, respectively. ECF No. 15-27; ECF No. 15-28. The state district court dismissed several grounds of Uribe's supplemental petition and set an evidentiary hearing. ECF No. 15-29. The evidentiary hearing was held on September 27, 2013. ECF No. 15-14. Following the hearing, the state district court dismissed the remaining grounds of Uribe's supplemental petition. ECF No. 15-15. The Nevada Supreme Court affirmed the denial of Uribe's petition. ECF No. 15-25.

Uribe dispatched his federal habeas petition for filing on or about June 7, 2015. ECF No. 7. The Respondents moved to dismiss Uribe's petition. ECF No. 12. Uribe moved for leave to file an amended petition. ECF No. 18. This Court granted Uribe's request and denied the Respondents' motion to dismiss as moot. ECF No. 22. Uribe filed his amended petition on January 19, 2017. ECF No. 23. Uribe's amended petition alleges the following violations of his federal constitutional rights:

> 1.1 His trial counsel failed to have his mental status evaluated to determine whether he had the capacity to understand the legal proceedings prior to allowing him to enter a guilty plea.
> 1.2 His trial counsel failed to explain the proper standard of proof for a criminal conviction before advising him to plead guilty.
> 1.3 Nev. Rev. Stat. § 62B.330(3) is unconstitutional.
> 2. His trial counsel was ineffective for failing to litigate his illegal extradition.
> 3. He did not knowingly and voluntarily enter into his guilty plea.
> 4. His trial counsel failed to present mitigating evidence at his sentencing.
> 5. His trial counsel failed to ensure that he received credit for his time served.

*Id.*; *see* also ECF No. 15-27.

The Respondents moved to dismiss Uribe's amended petition. ECF No. 24. This Court granted the Respondents' motion in part. ECF No. 31. Specifically, this Court dismissed

Grounds 1.2, 2., 3, and 5 as untimely. *Id.* at 5. The Respondents filed an answer to the remaining grounds—1.1, 1.3, and 4—on May 11, 2018. ECF No. 32. Uribe filed a reply on June 29, 2018. ECF No. 35.

## III.    STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly

established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## IV. DISCUSSION

### A. Ground 1.1

Uribe argues that his federal constitutional rights were violated when his trial counsel failed to have his mental state evaluated to determine whether he had the capacity to understand the legal proceedings prior to entering a guilty plea. ECF No. 23 at 4; ECF No. 15-27 at 10. In support of his contention that his trial counsel should have had his competency evaluated, Uribe explains that he was a minor child, was placed on suicide watch, was prescribed antidepressants, and did not have a high school education. ECF No. 35 at 2.

Uribe appears to have presented this ground in his state habeas appeal opening brief. *See* ECF No. 15-23 at 14-15 ("[Uribe] claimed that mental health issues precluded a full understanding of the plea," and "Uribe alleged that he was not competent to enter a plea due to his mental health issues and his age"). However, the Nevada Supreme Court did not consider this

ground. *See* ECF No. 15-25 at 4 ("Uribe contends that the district court erred by denying his claim that his guilty plea was not knowingly and voluntarily entered because he was incompetent at the time he pleaded guilty. However, Uribe argued below that counsel was ineffective for failing to determine *whether* he was competent. Because the assertion on appeal is not the same as that raised below, we decline to consider it." (emphasis in original)). Based on the Nevada Supreme Court's order, the question here is whether Uribe has shown that "there was no reasonable basis for [the Nevada Supreme Court] to deny relief." *Harrington*, 562 U.S. at 98.

During his initial arraignment in state district court, Uribe pleaded not guilty to the charge of murder with the use of a deadly weapon. ECF No. 14-13 at 4-5. A trial date was set. *Id.* at 6. Approximately five months later, on October 22, 2010, Uribe changed his plea. *See* ECF No. 14-27. At this change of plea hearing, Uribe indicated that he had not taken any medication in the last 24 hours, that he had spoken with his trial counsel about pleading guilty, and that he understood the plea negotiations. *Id.* at 4. The state district court fully canvassed Uribe about his guilty plea for the charge of second-degree murder. *See id.* at 5-11; *see also* ECF No. 14-28 at 6 (executed plea agreement, which provided that Uribe "offer[s his] plea freely, voluntarily, knowingly and full understanding of all matters set forth in the Information and in th[e] Plea Memorandum"). This canvass included asking Uribe about the maximum penalty and availability of probation for a second-degree murder conviction. ECF No. 14-27 at 8-9. Uribe correctly answered these questions. *Id.* The state district court then "f[ou]nd that the defendant understands the nature of the offense charged, the consequences of his plea, has made a knowing, voluntary and intelligent waiver of his constitutional rights" and "accept[ed] his plea." *Id.* at 11. As was pointed out by Uribe in his federal habeas petition, his trial counsel did not have a competency evaluation performed prior to this change of plea of hearing; and, indeed, Uribe's

trial counsel responded in the negative when asked whether he had "any question in [his] mind of [Uribe]'s competency to understand the nature of these proceedings, enter a plea or assist counsel at trial." *Id.* at 9-10.

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel, under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the United States Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*[ *v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland*

with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonably argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'").

In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Uribe contends that his trial counsel should not have allowed him to enter this guilty plea without first assessing his mental state and competency. "To establish that his counsel provided ineffective assistance in light of [the petitioner]'s alleged incompetency, [the petitioner] must first demonstrate that he was indeed incompetent to plead guilty." *United States v. Howard*, 381 F.3d 873, 877-78 (9th Cir. 2004). In order to meet the competency standard to plead guilty, it must be determined "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and a 'rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)); *see also Scarbo v. Eighth Judicial Dist. Court*, 125 Nev. 118, 122, 206 P.3d 975, 977 (2009) ("Competence shall be measured by the defendant's ability to understand the nature of the criminal charges and the nature and purpose of the court proceedings, and by his or her ability to aid and assist his or her counsel in the defense at any time during the proceedings and a reasonable degree of rational

understanding."). "When analyzing competence to plead guilty, [this court] look[s] to whether a defendant has 'the ability to make a reasoned choice among the alternatives presented to him.'" *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997) (quoting *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981)). Under Nevada's competency procedure, if "doubt arises as to the competence of the defendant, the court shall suspend the proceedings, the trial or the pronouncing of the judgment, as the case may be, until the question of competence is determined." Nev. Rev. Stat. § 178.405(1).

Although Uribe's contention that he was a minor child and did not have a high school education at the time the pleaded guilty are supported by the record, *see* ECF No. 15-14 at 8, 36 (demonstrating that Uribe was seventeen years old and had only completed tenth grade), Uribe fails to provide citations or support for his contentions that he was placed on suicide watch and prescribed antidepressants. *See Sandgathe v. Maass*, 314 F.3d 371, 379 (9th Cir. 2002) (affirming the district court's denial of the defendant's ineffective assistance of counsel claim because the defendant did not offer any evidence for his asserted incompetence to plead guilty). However, even if these facts are true, there is no evidence that Uribe communicated these facts to this trial counsel or that his trial counsel had independent knowledge of these facts. *See Howard*, 381 F.3d at 881 ("When counsel has reason to question his client's competence to plead guilty, failure to investigate further may constitute ineffective assistance of counsel"); *see also Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003) ("Trial counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired."). Moreover, the state district court's canvass of Uribe, *see* ECF No. 14-27 at 5-11, shows that he had the ability to understand the proceedings and to assist his trial counsel in preparing a defense. *Godinez*, 509 U.S. at 396; *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977)

("Solemn declarations in open court carry a strong presumption of verity."); *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong presumption of truth."). Finally, Uribe fails to cite to any requirement that a competency evaluation be automatically performed on a defendant who is under the age of eighteen.

Accordingly, because there was no doubt that arose regarding Uribe's competency, Nev. Rev. Stat. § 178.405(1), Uribe's trial counsel's "representation [did not] f[a]ll below an objective standard of reasonableness" when he did not seek to have a competency evaluation performed. *Strickland*, 466 U.S. at 688, 694. Therefore, the Nevada Supreme Court's ruling denying relief was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court will deny Uribe habeas corpus relief with respect to Ground 1.1.

## B. Ground 1.3

Uribe argues that his federal constitutional rights were violated because Nev. Rev. Stat. § 62B.330(3) is unconstitutional. ECF No. 23 at 4; ECF No. 15-27 at 12. Uribe explains that Nev. Rev. Stat. § 62B.330(3) allows a juvenile accused of murder to be charged as an adult without allowing for a determination by the state district court regarding whether the juvenile has the mental capacity to understand the consequences of his actions. ECF No. 15-27 at 12.

In Uribe's state direct appeal, the Nevada Supreme Court held:

Uribe appears to contend that NRS 62B.330(3) is unconstitutional. "The constitutionality of a statute is a question of law that we review de novo. Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional." *Silvar v. Dist. Ct.*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006) (internal footnote omitted). Uribe asserts that NRS 62B.330(3) allows juveniles accused of murder to be charged as adults without a process for review or certification by a juvenile court, and he argues that this lack of process is inconsistent with evolving standards of decency and thereby violates the Eighth

Amendment's proscription against cruel and unusual punishment. Uribe relies primarily on *Graham v. Florida*, 560 U.S. ___, 130 S. Ct. 2011 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005), to support this contention. However, neither of these cases addresses the constitutionality of state statutes that place juveniles outside the jurisdiction of the juvenile court for certain offenses and we conclude that Uribe has not met his burden to make a clear showing that NRS 62B.330(3) is unconstitutional.

ECF No. 15-9.

Nev. Rev. Stat. § 62B.330(3)(a) provides that a juvenile court is divested of "jurisdiction over a person who is charged with committing . . . [m]urder or attempted murder . . . if the person was 16 years of age or older when the murder or attempted murder was committed." Nev. Rev. Stat. § 62B.330 is a jurisdictional statute. *State v. Barren*, , 342, 279 P.3d 182, 185 (2012) (explaining that "the juvenile court system is a creation of statute, and it possesses only the jurisdiction expressly provided for it in the statute" (internal quotation marks omitted)). It does not appear that the jurisdictional nature of this statute impedes Uribe's constitutional rights. *See Landgraf v. USI Film Products*, 511 U.S. 244, 274 (1994) ("[J]urisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties" (internal quotation marks omitted)); *Hamdan v. Rumsfeld*, 548 U.S. 557, 576-77 (2006) ("[A] jurisdiction-conferring or jurisdiction-stripping statute usually 'takes away no substantive right but simply changes the tribunal that is to hear the case'" (quoting *Hallowell v. Commons*, 239 U.S. 506, 508 (1916)).

Moreover, the two cases cited by Uribe miss the mark. In *Roper v. Simmons*, the Supreme Court analyzed "whether it is permissible under the Eighth and Fourteenth Amendments to the Constitution of the United States to execute a juvenile offender who was older than 15 but younger than 18 when he committed a capital crime." 543 U.S. 551, 555-56 (2005). And in *Graham v. Florida*, the Supreme Court analyzed "whether the Constitution permits a juvenile

offender to be sentenced to life in prison without parole for a nonhomicide crime." 560 U.S. 48, 52-53 (2010).

Further, although only addressed in dicta, the Supreme Court in *Graham* did discuss trying a juvenile defendant in an adult court. *See id.* at 66-67. The Supreme Court explained that "[m]any States have chosen to move away from juvenile court systems and to allow juveniles to be transferred to, or charged directly in, adult court under certain circumstances." *Id.* Importantly, the Supreme Court did not criticize this practice other to explain that "many States [may not have] intended to subject [juvenile] offenders to life without parole sentences" when directing that a juvenile be transferred to or directly charged in adult court. *Id.* Finally, the Supreme Court explained that "criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." *Id.* at 76. Because Nev. Rev. Stat. § 62B.330(3)(a) does take age into account by not allowing jurisdiction to transfer unless the defendant is 16 years of age or older, Nev. Rev. Stat. § 62B.330(3)(a) would not be considered flawed. Therefore, the Nevada Supreme Court's ruling denying relief was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court will deny Uribe habeas corpus relief with respect to Ground 1.3.[1]

## C.    Ground 4

Uribe argues that his federal constitutional rights were violated when his trial counsel failed to adequately investigate and present mitigating evidence at his sentencing hearing. ECF

---

[1] To the extent that Uribe argues that his appellate counsel was ineffective for not adequately explaining why Nev. Rev. Stat. § 62B.330(3)(a) is unconstitutional on appeal, *see* ECF No. 15-27 at 8, such an argument is meritless in light of this Court's conclusion that Nev. Rev. Stat. § 62B.330(3)(a) is not unconstitutional.

No. 23 at 8, 10. Uribe contends that his trial counsel failed to have his mother and an expert

testify and failed to sufficiently litigate the factors enumerated in Nev. Rev. Stat. § 193.165. *Id.*

at 8, 10-11. The Respondents assert that Uribe fails to identify what additional information his

mother or an expert witness would have provided that was not already discussed in Uribe's own

statement, the presentence report, or argued by counsel. ECF No. 32 at 11.[2]

In Uribe's state habeas appeal, the Nevada Supreme Court held:

> Uribe contends that the district court erred by denying his claim that counsel was
> ineffective at sentencing for failing to present testimony from his mother and failing
> to ensure that the court considered the factors enumerated in NRS 193.165(1)(a)-
> (e). Uribe also contends that the district court erred by denying this clam without
> conducting an evidentiary hearing. We disagree. At sentencing, counsel presented
> substantial mitigating evidence and argued that a lower sentence was warranted
> because of Uribe's troubled upbringing, youth, and capacity for change. Before
> imposing [the] sentence, the court noted that it had considered the mitigating
> circumstances and the factors enumerated in NRS 193.165(1)(a)-(e). In his petition,
> Uribe did not identify what his mother would have said or what actions counsel
> could have taken which would have changed the sentence imposed. *See Strickland
> v. Washington*, 466 U.S. 668, 687-88 (1984) (a petitioner must demonstrate that
> counsel's performance fell below an objective standard of reasonableness, and a
> reasonable probability that, but for counsel's errors, the outcome of the proceedings
> would have been different); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504,
> 505 (1984). We conclude that the district court did not err by denying this claim
> and by doing so without conducting an evidentiary hearing. *See Rubio v. State*, 124
> Nev. 1032, 1046, 194 P.3d 1224, 1233-34 (2008) ("[W]hen the defendant's claims
> are belied by the record or not supported by specific facts, which, if true, would

---

[2] To the extent that Uribe also urges that the state district court erred in its consideration
of "suspect evidence" at his sentencing and "failed to determine the proper application of the
NRS 193.165 factors," *see* ECF No. 23 at 8, 10, this contention lacks merit. The state district
court indicated:

> [T]this Court has considered, A, the facts and circumstances of the crime,
> B, the criminal history of the person, C, the impact the crime has on any victim,
> particularly in this case, the mother, the grandmother, the friends, the community
> who suffered so grievously for this loss.

> The Court has also considered all and any mitigating factors presented by
> the defendant and all relevant information provided by the presentence
> investigation report, the victim's statement, the defendant's statement and
> argument of counsel in determining the length of the additional penalty imposed.

ECF No. 14-36 at 34.

entitle him to relief, the district court may reject a claim without conducting an evidentiary hearing.).

ECF No. 15-25 at 2-3.

After acknowledging the "tragic loss" of the victim, Uribe's trial counsel discussed a variety of topics at Uribe's sentencing:

> In weighing the reasons for militating that sentence or for following the recommendation, there are a host of reasons. My client is 17 and a half years old now as he appears before you now and only by virtue of the nature of this charge is he treated at all as an adult. He was 16 and a half at the time of the instant offense.

> In his family history, as you have read, he lost his father by no fault of his due to his father's criminal charges 10 years ago and was without that male influence. His male influence, his older brother was tragically killed in a criminal matter as a victim some three years ago.

> Mr. Uribe has a close and loving family. His mother, his sisters, they are hard-working, they are educated. His sisters are nurses or becoming nurses. The mother works extremely hard running her business where Oscar worked when he was younger.

> With the loss of his father, he, I would submit, was taken care of as well as he can be and as well up to that point as he could be expected to.

> The Court has read his statement. He is bright and he is articulate. And I will tell you as an officer of the Court, I've been known to help on those. I did not write that, nor did I edit it. This is in whole Mr. Uribe's statement. I did not - - upon seeing it, I didn't change it. I didn't change a word.

> It is in my experience in 25 years before the bar one of the best allocutions of a defendant that I have ever read in terms of remorse, regret, hope for the future and his plans, knowing and I submit knowing that at 17, knowing that at the very minimum, he is doing at least 10 years calendar time in Nevada State Prison, plus whatever the Court assesses for the firearms.

> He is with his plans working on his education in the jail. And his prior contacts with law enforcement, which are few, really has one juvenile petition, the report of his probation officer was that, to quote the report, was that he was respectful and cooperative.

> He did not have an extensive juvenile history. He had one petition, alcohol involved. And he did not have known gang relationships prior to this tragic event.

The defendant's statement as to the events in question tallies more closely to the evidence that was adduced at the preliminary hearing, which was the only evidentiary hearing in this matter and substantiates the State's offer of a second degree verdict, which was appropriate in this case.

In that as the department relates, Mr. Uribe was at the party, uninvited, with friends of his. They were not the people in red who were related to, they were in black. It was Mr. Beltran and his associates who were in the red.

The evidence at the preliminary hearing would indicate that there was a confrontation between the groups outside the home in question. And, in fact, there was evidence that it was Mr. Beltran who struck Mr. Uribe first and the fight was on.

Does that militate the fact that a firearm was used? No, of course not. By all evidence, Mr. Beltran was unarmed and struck Mr. Uribe with his fist. There's no self-defense issue.

But the inference that could be read from the department's synopsis would tend to indicate that Mr. Uribe and his associates had been responsible for other events there, were ganged up there and had set upon Mr. Beltran, and I would submit that's not the evidence from the preliminary hearing.

There were two groups there, and there was as well-stated by the department, bad blood because of a wholly unrelated to my client homicide in August.

. . .

My client appeared before this Court and made his plea statement and acknowledged that he killed Elvin Beltran and acknowledged he used a firearm. He was the person who brought the firearm there or used it and it makes for the second degree, with credit to the State, the appropriate resolution of this case.

But not as a negotiation down. There was no evidence throughout there was anything premeditated between these parties. It's not a negotiated down verdict or a plea. This was an appropriate resolution based on what actually happened, which was an unreasonable response to what happened and, unfortunately, leading to the death of Mr. Beltran. And all of that, of course, is how I recall the evidence from the preliminary hearing.

And as I say, the summary of all that is that, and I think the import of all that, there's no evidence at all that there was any indication that anyone went looking for anyone that night. Things escalated badly. But the State's offer and negotiation in this case was appropriate based on the facts as they existed and we're not dealing down.

. . .

> Youth is a huge issue for two reasons. Not only because of itself, not only by virtue of the youth of the defendant at the time of the offense and now, but because of what we know about the development now of the cortex. The ability for rational thought and consideration of consequences does not exist in youth and all the biochemical and physiological research now tends to indicate that we develop that capacity much later, unfortunately, now.

> Unfortunately, I suspect for society, because we have in this case access to deadly weapons with people who do not have the capacity to consider the rashness of their actions. The list of reasons for some mercy or consideration of that in this case is long.

ECF No. 14-36 at 7-12. In response to the State's comments, Uribe's trial counsel also explained:

> The problem I have is with the statement that these are the actions of a mature adult. And, indeed, the actions themselves indicate that they are not the actions of a mature adult. A mature adult does not engage in bravado or bringing a firearm when there's no reason to do so. They are the actions of an impetuous youth. They are the actions of a lack of consequences of consideration of potential consequences. I make no statements about the validity or the lack of validity of freely available firearms. Mr. Uribe was under 21. It was still illegal to have one in the first place.

> The point is that they are there, they are available. Those actions are those of uncalculating youth leading to this tragic consequence.

*Id.* at 28. The state district court then sentenced Uribe to "25 years with parole eligibility after 10 calendar years have been served" for the second-degree murder conviction and a consecutive sentence of "60 to 150 months" for the deadly weapon enhancement. *Id.* at 33.

During the post-conviction evidentiary hearing, Uribe explained that he had requested that his trial counsel have his mother testify at his sentencing hearing. ECF No. 15-14 at 30, 38. Uribe's mother testified at the post-conviction evidentiary hearing that she wished to speak at Uribe's sentencing in order to "help the Court understand Oscar's youth." *Id.* at 24, 28. Uribe's trial counsel explained why he did not have Uribe's mother testify at the sentencing hearing:

Primarily because I had two things that I considered to be extraordinarily good. I had a very favorable presentence report, which outlined all of the substantial mitigating evidence, primarily is youth and his lack of significant criminal history of any kind. Plus the recommendation from Parole and Probation for the weapons enhancement was for 24 to 60, I think. I know it was 24 on the low end. It was an extraordinarily good recommendation that we urged the Court to follow. At Mr. Uribe's request, I specifically argued for a 12-month [sentence] on the low end, which would be the minimum on the enhancement.

And I had, as well, Mr. Uribe's handwritten letter to the Court that was his personal statement, it wasn't included with the PSI, he provided it later and we filed it and I know the Court considered it prior to sentencing. And I said at the time, because I did review the transcripts of the sentencing, that it was in my opinion the best written allocution of a defendant that I had ever read. I still think that was the case. It was extraordinarily well-written, it was extraordinarily well-spoken and I didn't think there was much I could say that was frankly better than that.

*Id.* at 7, 21-22. Uribe's trial counsel also explained that there is a potential downside to presenting a witness at sentencing: "If a prosecutor chose to cross examine them, he could. He could go potentially deeper into is unknown criminal background or tendencies or potential gang affiliation, none of which was in the PSI." *Id.* at 22.

Counsel's performance at the penalty phase is measured against "prevailing professional norms." *Strickland*, 466 U.S. at 688. And this Court "must avoid the temptation to second-guess [counsel's] performance or to indulge 'the distorting effects of hindsight.'" *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (citing *Strickland*, 466 U.S. at 689). Counsel's "performance [is] deficient only if, viewing the situation from his perspective at the time of trial, his decisions cannot be characterized as 'sound trial strategy.'" *Id.* (citing *Strickland*, 466 U.S. at 689). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690; *see also Correll v. Ryan*, 539 F.3d 938, 948 (9th Cir. 2008) ("[U]nder *Strickland*, we must defer to trial counsel's strategic decisions."). But "judicial deference to counsel is predicated on counsel's performance of

sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." *Mayfield*, 270 F.3d at 927. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations." *Strickland*, 466 U.S. at 690-91. When challenging a trial counsel's actions in failing to present mitigating evidence during a sentencing hearing, the "principal concern . . . is not whether counsel should have presented a mitigation case[, but instead] . . . whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003) (emphasis in original).

Addressing first Uribe's assertion that his trial counsel should have called his mother to testify at this sentencing hearing, Uribe's trial counsel explained that he did not call Uribe's mother because Uribe's statement and the presentence report were "extraordinarily good." ECF No. 15-14 at 21. Uribe's trial counsel further expounded that he did not want to subject Uribe's mother to cross examination and potentially get into Uribe's "unknown criminal background or tendencies or potential gang affiliation," which would have caused damage. *Id.* at 22. This reasoning is sound. *See Darden v. Wainwright*, 477 U.S. 168, 186 (1986) (rejecting an ineffective assistance of counsel claim based on counsel's rejection of the use of psychiatric testimony because "counsel reasonably could have chosen to rely on a simple plea for mercy from petitioner himself. Any attempt to portray petitioner as a nonviolent man would have opened the door for the State to rebut with evidence of petitioner's prior convictions. This evidence had not previously been admitted in evidence, and trial counsel reasonably could have viewed it as particularly damaging"). Accordingly, because Uribe's trial counsel's actions

showed "sound trial strategy," *Strickland*, 466 U.S. at 689, it cannot be determined that he was deficient in this regard.

Turning to Uribe's contention that his trial counsel should have called an expert to testify at his sentencing hearing, Uribe claims that an expert opinion would have been beneficial "on the question of whether [he] was subject to being rehabilitated, whether [he] was dangerous to the community in a future sense and whether some act short of a lengthy sentence on the weapons enhancement would be appropriate in this case." ECF No. 23. Although an unspecified expert may have been able to elaborate on these matters, Uribe's trial counsel did address each of these issues. *See* ECF No. 14-36 at 7 ("I would recommend 12 to 60 as the firearms enhancement"); at 13 (requesting that the state district court "exercise that consideration in following the recommendation as to the firearms enhancement or consider potentially 12 to 60 months as that enhancement"); at 14 ("There are . . . people who can improve and go on through the process and I submit that he is one of the people who may actually take the opportunity to improve and come through knowing that."). Additionally, Uribe cannot show that "there is a reasonable probability that" if an expert had testified at his sentencing hearing, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (denying an ineffective assistance of counsel claim based on counsel's refusal to call witnesses because the defendant "offers no indication of . . . how their testimony might have changed the outcome of the hearing"). Indeed, the state district court appears to have sentenced Uribe on the deadly weapon enhancement primarily based on deterrence principles. *See* ECF No. 14-36 at 32 ("There is a deterrent factor in the sentence this Court intends to impose and it relates simply to the fact that if another young man thinks that he's going to be a grown up by sticking a

gun in his waistband and going to a place where he knows there may be trouble, that he's going to end up in one of two places, a prison yard or a graveyard.").

Finally, Uribe's trial counsel's comments during Uribe's sentencing showed that he properly investigated, prepared, and considered the factors outlined in Nev. Rev. Stat. § 193.165(1) (instructing the state district court to consider the following factors when determining the length of the additional penalty imposed for the use of a firearm: "(a) [t]he facts and circumstances of the crime; (b) [t]he criminal history of the person; (c) [t]he impact of the crime on any victim; (d) [a]ny mitigating factors presented by the person; and (e) [a]ny other relevant information"). First, Uribe's trial counsel pointed out the facts and circumstances of the crime by explaining that Uribe did not go to the party with the intention of killing anyone; rather, there was an unforeseen confrontation which escalated between two groups of people at the party. ECF No. 14-36 at 9-10. Second, Uribe's trial counsel explained that Uribe only had one prior criminal incident and that incident involved alcohol. *Id.* at 9. Third, Uribe's trial counsel acknowledged the "tragic loss" of the victim. *Id.* at 7. Fourth, for mitigation purposes, Uribe's trial counsel pointed out that Uribe was a minor child at the time the offense was committed and at the time of sentencing, that Uribe's father was imprisoned, that Uribe's brother was tragically killed, and that Uribe was remorseful and regretful regarding the death of the victim. *Id.* at 8-9.

Therefore, the Nevada Supreme Court's ruling denying relief was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence.

*See* 28 U.S.C. § 2254(d). The Court will deny Uribe habeas corpus relief with respect to Ground 4.[3]

## V.  CERTIFICATE OF APPEALABILITY

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000).

Applying this standard, the Court finds that a certificate of appealability is unwarranted in this case. The Court will deny Uribe a certificate of appealability.

///

///

///

///

///

///

---

[3] Uribe also appears to argue that his trial counsel was ineffective for failing to call a forensic witness at his sentencing hearing to demonstrate that "no weapons were found, the shell cas[ings] at the scene [were] not identified, [and] there were reports of more than one weapon being discharged but not from who." ECF No. 35 at 3. It appears that Uribe wished to have a forensic expert testify in order to show that he was innocent. However, because Uribe had already pleaded guilty, his trial counsel was not deficient in not presenting this testimony.

## VI.    CONCLUSION

IT IS THEREFORE ORDERED that the Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody (ECF No. 23) is DENIED.

IT IS FURTHER ORDERED that Uribe is denied a certificate of appealability.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment accordingly.

DATED: April 29, 2021.

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE